**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2011-NMCA-058

Filing Date: April 19, 2011

Docket No. 28,695

CHARLES F. HEADEN,

       Petitioner-Appellant,

v.

JOHN D'ANTONIO, JR., P.C.,
STATE ENGINEER and THE
OFFICE OF THE STATE
ENGINEER OF NEW MEXICO,

       Respondents-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SOCORRO COUNTY**
Matthew G. Reynolds, District Judge

Fitch & Tausch, LLC
Thomas G. Fitch
Socorro, NM

Jones & Smith, LLC
J. Brian Smith
Albuquerque, NM

for Appellant

New Mexico Office of the State Engineer
DL Sanders, Chief Counsel
Jonathan E. Sperber, Special Assistant Attorney General
Santa Fe, NM

for Appellees

**OPINION**

**KENNEDY, Judge.**

1

**{1}** Appellant Charles Headen (Headen) filed an application with Appellees Office of the State Engineer and State Engineer John D'Antonio (collectively OSE) to change the point of diversion and place and purpose of use of water rights he claims to possess in Socorro County, New Mexico. Prior to the administrative hearing, Headen filed a declaratory judgment action in district court to establish the validity of his water rights, and the court dismissed his claim. Citing *Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 10, 142 N.M. 786, 171 P.3d 300, the court concluded that Headen failed to exhaust his administrative remedies and that an action for declaratory judgment was premature. We hold that *Lion's Gate Water v. D'Antonio*, 2009-NMSC-057, 147 N.M. 523, 226 P.3d 622, together with *Smith*, require us to affirm the district court.

**BACKGROUND**

**{2}** Headen owns two tracts of land in Socorro County and claims to possess corresponding appurtenant water rights in the amount of 82.83 acre feet. On February 7, 2006, he filed with OSE an "[a]pplication to change the point of diversion and place and purpose of use" of his water rights. OSE denied Headen's application in a letter dated October 13, 2006, which informed Headen he possessed no valid water rights to transfer. OSE stated that Headen was free to appeal the determination within thirty days to an administrative hearing officer, which he did.

**{3}** Headen requested an administrative hearing. Prior to the administrative hearing, Headen filed a petition in district court seeking a declaratory judgment to establish "the existence and validity" of his water rights. He also filed a motion to stay the administrative proceedings before OSE. The court held a hearing on the motion and, on December 21, 2006, the parties stipulated that administrative proceedings should be stayed pending the outcome of the declaratory judgment action. That stipulation provides, "[OSE] shall take no further action in the foregoing administrative proceeding until the [p]etition herein filed has been heard and determined by the [c]ourt." Throughout the proceedings in the district court, Headen argued the validity of his water rights and provided a variety of factual evidence to support his claim.

**{4}** OSE filed a motion to dismiss Headen's declaratory judgment action on the basis that he failed to exhaust his administrative remedies pursuant to NMSA 1978, Section 72-2-16 (1973). The district court initially denied OSE's motion to dismiss. OSE asked for reconsideration of the court's order based on its belief that the court ruled the Declaratory Judgment Act does not prohibit a court from hearing a claim "simply because a petitioner who initially chose to follow an administrative process later decides to proceed in district court." The district court changed its position. Citing *Smith*, the court dismissed Headen's declaratory judgment claim and allowed him to "proceed with his appeal before [OSE]." Under *Smith*, the court noted that when a party invokes an administrative remedy before an agency, the party must "follow that path all the way through." Only then may the party appeal to the district court.

**{5}** Headen contends that the district court improperly dismissed his declaratory judgment claim for the following reasons: first, because under the Declaratory Judgment Act, NMSA 1978, §§ 44-6-1 to -15 (1975), the court possessed jurisdiction to determine the validity of his water rights; second, because under *Smith*, he was not required to exhaust his administrative remedies; and third, because OSE waived the exhaustion requirement when it stipulated to a stay of administrative proceedings. We consider each contention in turn.

## DISCUSSION

### A. Standard of Review

**{6}** The district court is "vested with broad discretion to grant or refuse claims for declaratory relief." *State ex rel. Stratton v. Roswell Indep. Schs.*, 111 N.M. 495, 508, 806 P.2d 1085, 1098 (Ct. App. 1991) (internal quotation marks and citation omitted). We analyze a district court's dismissal of a declaratory judgment action for abuse of discretion. "An abuse of discretion occurs when the district court's ruling is clearly against logic and effect of the facts and circumstances" before it. *Id.* "We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

### B. *Lion's Gate*

**{7}** *Lion's Gate* was decided after the briefs in the present appeal were filed. It is directly applicable to the administrative proceeding issues in the present case. *Lion's Gate* involved a state engineer's threshold determination as to water availability and indicated that a state engineer can "efficiently dispose of applications without a hearing whenever he or she determines [as a threshold matter] that water is unavailable to appropriate." *Id.* ¶ 25. It held that a state engineer is required to reject an application without reaching the merits of the application if there is a "pre-hearing . . . determination that water is unavailable to appropriate." *Id.* ¶¶ 26-27. The "'aggrieved' applicant may request a post-decision hearing" on the issue of whether water is unavailable to appropriate. *Id.* ¶ 25. The State Engineer must hold the hearing if requested by the aggrieved party, since *Lion's Gate* indicates that no appeal can be made to the district court "until the [S]tate [E]ngineer has held a hearing and entered his decision in the hearing." *Id.* (internal quotation marks and citation omitted). *Lion's Gate* refused "to equate a de novo review scope of appellate review with a district court's original jurisdiction" and, thereby, "create a short circuit in the administrative process[.]" *Id.* ¶¶ 28, 30.

**{8}** *Lion's Gate*'s "approach conforms with [its] recent holding in *Smith*, [2007-NMSC-055, ¶ 15] in which [the Supreme Court] cautioned against actions that would foreclose any necessary fact-finding by the administrative entity, discourage reliance on any special expertise that may exist at the administrative level, or disregard an exclusive statutory

3

scheme for the review of administrative decisions." *Id.* ¶ 34 (alterations omitted) (internal quotation marks omitted).

**{9}** In regard to the necessity for an applicant to exhaust the administrative process, we see no significant difference between the subject of the threshold issue of water availability in *Lion's Gate* and the issue of forfeiting a water right in the present case. Applying *Lion's Gate*, Headen had to proceed with an administrative hearing if he wanted to pursue appellate review. He in fact requested the hearing, which makes the requirement that he proceed with the appeal even more compelling, even though that fact is not essential to our determination in this case. Thus, for Headen to overcome the pre-hearing determination of forfeiture based on the Supreme Court's holding in *Lion's Gate*, Headen had to continue with the administrative process and then force the State Engineer in a statutory de novo hearing in the district court to prove the forfeiture and persuade the court to extinguish the water right.

**{10}** We reject Headen's contention that either the State Engineer must immediately go into court to extinguish the water right based on forfeiture after the pre-hearing determination, or Headen had the right to seek relief in a declaratory judgment action. As to the first alternative, Headen is mistaken. The State Engineer was not required to seek court relief extinguishing the water rights before an administrative hearing occurred and Headen thereafter sought judicial relief. As to the second alternative, although *Lion's Gate* controls our determination in this case, *Smith*, which involves a declaratory judgment action, provides added support for our determination.

## C.    *Smith*

**{11}** The conflict between declaratory judgment actions and administrative remedies was analyzed in *Smith*. *Smith* is a municipal water code case and not a water code case. It involves Rule 1-075, not a water code statutory or Article XVI, Section 5 appeal, and it involves a procedural history different than that in the present case with different facts and issues than those in the present case. Nevertheless, it is instructive in determining when a party may pursue a declaratory judgment instead of first exhausting remedies before an administrative body.

**{12}** In *Smith*, two separate plaintiffs, the Smiths and the Stillmans, challenged the City of Santa Fe's authority to deny permits under a city ordinance concerning the drilling of private water wells within city limits. 2007-NMSC-055, ¶¶ 1, 5. The Smiths' permit application was denied because their proposed well did not conform to the ordinance's requirements. *Id.* ¶ 4. They appealed in accordance with the city's established administrative process, to the city manager, the public utilities committee, and finally the city council without success. *Id.* Under the administrative appeals process, the Smiths would next have appealed for judicial review pursuant to Rule 1-075 NMRA (governing district court review of administrative decisions), but they chose instead to file a declaratory judgment action almost four months later in which they argued that the city was without authority to deny their permit. *Smith*, 2007-NMSC-055, ¶¶ 5, 11. The Stillmans never

applied for a permit, fearing their application would be denied if they did so, but joined the declaratory judgment action. *Id.* ¶ 4. The district court concluded it had jurisdiction to hear the matter, that neither plaintiff was required to exhaust administrative remedies, and that the city was without authority to prohibit the drilling of wells within the city's limits. *Id.* ¶ 5. This Court reversed on other grounds and refused to consider the jurisdictional question. *Id.* ¶ 6.

**{13}** Our Supreme Court took up the jurisdictional question and held that the Smiths, having sought administrative review, were required to exhaust administrative remedies and to comply with applicable time frames prior to proceeding to the district court, while the Stillmans remained free to pursue a declaratory judgment action. *Id.* ¶¶ 17, 23-25, 27. In reaching that conclusion, the Court compared the Declaratory Judgment Act with the doctrine of exhaustion of remedies. *Id.* ¶ 26. As the Court observed, the New Mexico Constitution empowers district courts with "original jurisdiction in all matters and causes not excepted in [the] Constitution, . . . such jurisdiction of special cases and proceedings as may be conferred by law, and appellate jurisdiction of all cases originating in inferior courts and tribunals in their respective districts." *Id.* ¶ 12 (alteration in original) (internal quotation marks and citation omitted). As such, "[t]he Declaratory Judgment Act [is] intended to be liberally construed and administered as a remedial measure." *Id.* ¶ 13 (alteration in original) (internal quotation marks and citation omitted). It "is a special proceeding that grants the district courts the power to declare rights, status and other legal relations whether or not further relief . . . could be claimed." *Id.* (internal quotation marks and citation omitted). It does not, however, increase district courts' jurisdiction "over subject matter and parties." *Id.* In contrast, under the doctrine of exhaustion of remedies, "where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Id.* ¶ 26 (alteration omitted) (internal quotation marks and citation omitted). The doctrine rests upon the principle that "the interests of justice are best served by permitting the agency to resolve factual issues within its peculiar expertise" prior to allowing the party to proceed to the courts. *Id.* (internal quotation marks and citation omitted). As the Court observed,

> the exhaustion doctrine applies where an administrative agency alone has authority to pass on every question raised by the one resorting to judicial relief, but does not apply in relation to a question which, even if properly determinable by an administrative tribunal, involves a question of law, rather than one of fact.

*Id.* ¶ 27 (internal quotation marks and citation omitted).

**{14}** In *Smith*, the Court held that "a declaratory judgment action [may] provide an alternative means of challenging an administrative entity's authority," as long as such action is not used to "circumvent established procedures for seeking judicial review of a municipality's administrative decisions." 2007-NMSC-055, ¶¶ 1, 11-15. In this context,

5

declaratory judgment actions "should be limited to purely legal issues that do not require fact-finding by the administrative entity." *Id.* ¶ 16. Furthermore, even when a case involves a purely legal question, if the party has invoked the administrative process, he must "comply with the applicable time frames that would otherwise govern judicial review of the administrative decision . . . . To hold otherwise would invite chaos and preclude certainty in the finality of administrative decisions that might otherwise be subject to multiple avenues of judicial review at unpredictable times." *Id.* ¶ 23; *see Baca*, 2008-NMSC-047, ¶ 22. The Supreme Court

> caution[ed] against using a declaratory judgment action to challenge or review administrative actions if such an approach would foreclose any necessary fact-finding by the administrative entity, discourage reliance on any special expertise that may exist at the administrative level, disregard an exclusive statutory scheme for the review of administrative decisions, or circumvent procedural or substantive limitations that would otherwise limit review through means other than a declaratory judgment action.

*Smith*, 2007-NMSC-055, ¶ 15; *see also State of N.M. ex rel. Hanosh v. N.M. Envtl. Improvement Bd.*, 2008-NMCA-156, ¶ 6, 145 N.M. 269, 196 P.3d 970 (stating that a party may not seek a declaratory judgment when additional fact-finding or agency expertise is necessary). Thus, despite the fact that both the Smiths and the Stillmans presented identical and purely legal questions, the Smiths were required to comply with the administrative process they started, while the Stillmans remained free to seek a declaratory judgment. *Smith*, 2007-NMSC-055, ¶¶ 17, 23-25, 27. In *Smith*, the question of law was limited to whether the agency "had [the] right to even make a decision." *Id.* ¶ 17; *see Baca*, 2008-NMSC-047, ¶ 21 (stating that the validity of a contract presents a purely legal question); *Stennis v. City of Santa Fe*, 2008-NMSC-008, ¶ 14, 143 N.M. 320, 176 P.3d 309 (holding that whether a city has the authority to enact a particular statutory scheme is a purely legal question). In declaratory judgment actions, arguments that an agency made the *wrong* decision are improper. *Cf. Smith*, 2007-NMSC-055, ¶ 17 (recognizing that the plaintiffs "[did] not argue that the [c]ity made the wrong decision; they argue[d] that the [c]ity had no right to even make a decision" and noting that "such a challenge is precisely the type of question appropriately considered by a declaratory judgment action").

**{15}** In sum, *Lion's Gate* with *Smith* require a determination that the State Engineer had authority to make the forfeiture determination and Headen was required to proceed through the administrative process, including the statutory de novo appeal procedure, to pursue relief from that forfeiture determination. We reject Headen's arguments to the contrary. We are unpersuaded by Headen's attempt to construct a viable argument under *Smith* to allow his declaratory judgment action to proceed.

**D.      Effect of OSE's Stipulation to Stay Administrative Proceedings**

**{16}** Even presuming he was prohibited from seeking a declaratory judgment under *Smith*, Headen argues that OSE waived the exhaustion requirement when it stipulated to stay administrative proceedings pending the outcome of his claim in district court. We disagree. Each of the authorities Headen cites is readily distinguishable from the facts in this case, and the most reasonable interpretation of the stipulation's plain language demonstrates OSE's intent to retain jurisdiction after a determination of the declaratory judgment action.

**{17}** In *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976), the Supreme Court determined the availability of judicial review under a specific statutory scheme requiring the exhaustion of remedies. In holding that the agency had waived the exhaustion requirement, the Court relied on the agency's statement that "no further review [was] warranted." *Id.* at 330. Similarly, in *Mathews v. Diaz*, 426 U.S. 67, 76 (1976), the Supreme Court concluded that the agency waived the exhaustion requirement when it stipulated that no remaining facts were in dispute and that the matter was "ripe for disposition by summary judgment." Likewise, in *Ahghazali v. Sec'y of Health & Human Servs.*, 867 F.2d 921, 923 (6th Cir. 1989), the agency stipulated that administrative proceedings were complete. In the instant case, however, the district court was not considering a specific statutory scheme requiring the exhaustion of remedies, nor did OSE stipulate that administrative proceedings were completed or unnecessary.

**{18}** The stipulated order provides, "the following administrative proceeding, which is presently pending before [OSE], is hereby stayed . . . . [OSE] shall take no further action in the foregoing administrative proceeding until the [p]etition herein filed has been heard and determined by the [c]ourt." This language does not preclude OSE's successful motion to dismiss the declaratory judgment, nor does it dismiss the matter before the agency. It merely stays it pending resolution of the declaratory judgment action, which was dismissed. We will not concern ourselves with what might have happened had the district court declared Headen's water rights to be valid, and we therefore hold that the stipulated order did not constitute a waiver of exhaustion of remedies. The district court dismissed Headen's claim, and the matter now properly returns to the agency for adjudication.

**CONCLUSION**

**{19}** For the foregoing reasons, we affirm the order of the district court dismissing Headen's declaratory judgment claim for failure to exhaust administrative remedies.

**{20}** **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**TIMOTHY L. GARCIA, Judge**

**Topic index for _Headen v. D'Antonio_, Docket No. 28,695**

**AL**                 **ADMINISTRATIVE LAW AND PROCEDURE**
AL-EX           Exhaustion of Administrative Remedies
AL-SR           Standard of Review

**AE**                 **APPEAL AND ERROR**
AE-SP           Stay Pending Appeal

**CP**                 **CIVIL PROCEDURE**
CP-SG           Stay of Proceedings
CP-SN           Stipulation

**GV**                 **GOVERNMENT**
GV-SE           State Engineer

**JM**                 **JUDGMENT**
JM-DJ           Declaratory Judgment

**NR**                 **NATURAL RESOURCES**
NR-WL          Water Law